```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF TENNESSEE
 2                     NASHVILLE DIVISION

 3

 4   UNITED STATES OF AMERICA      )
                                   )
 5   vs.                           ) No.:  3:10-cr-00009
                                   )
 6   JEREMY SETH TUMMINS           )
                                   )
 7
     _____
 8
                   TRANSCRIPT OF PROCEEDINGS
 9   _____

10   BEFORE:          THE HONORABLE WILLIAM J. HAYNES, SENIOR JUDGE

11   DATE:            February 9, 2015

12   TIME:            1:06 P.M.

13
     _____
14
     APPEARANCES:
15
     FOR THE GOVERNMENT:  LYNNE T. INGRAM
16                        S. CARRAN DAUGHTREY
                          U. S. Attorney's Office
17                        110 9th Ave South, Room A961
                          Nashville, Tennessee 37203
18
     FOR THE DEFENDANT:   JENNIFER L. THOMPSON
19                        3200 West End Avenue, Suite 500
                          Nashville, Tennessee  37203
20

21

22
     _____
23   BRIAN V. RATEKIN, RPR, CCR
     Contract Court Reporter
24   837-A U.S. Courthouse
     Nashville, Tennessee  37203
25   Telephone:  615-726-2737

26
```

```
1                        FEBRUARY 2, 2015

2              THE COURT:  We are here in the United States of America

3    versus Jerry Seth Tummins, and 3:10-cr-9, conference -- pretrial

4    conference.

5         Will counsel identify who is here and on whose behalf?

6              MS. THOMPSON:  Yes, your Honor.  Jennifer Thompson for

7    Mr. Tummins.  I would also ask if my paralegal could sit next to

8    me at counsel table.

9              THE COURT:  That is fine.

10             MS. INGRAM:  Good afternoon.  Lynne Ingram and Carran

11   Daughtrey appearing for the United States.

12             THE COURT:  I apologize for the brief delay, but I just

13   got these responses that were filed today a few minutes ago.

14        Let me take up first the defendant's motion.  It's a motion

15   in limine, but it seems to me to really involve motions for

16   discovery.  Is there any dispute that the images that were

17   seized from the defendant's computer were made available to

18   the --

19             MS. THOMPSON:  I'm sorry; I didn't hear what the Court

20   said.

21             THE COURT:  Is there any dispute that a disc taken from

22   the defendant's computer with the images at issue were provided

23   to you?

24             MS. THOMPSON:  Well, the -- yes.  I think that there

25   was a copy that was provided to the expert witness that was a
```

1    duplicate copy of my client's hard drive that had been cleansed,
2    and that had to remain in the expert witnesses' office.
3    I did -- was provided last week with --
4          THE COURT:  Well, wait a minute.  Let me back up.  Did
5    you get a copy of what the expert has, or the expert has a copy
6    and you get to go look at it?
7          MS. THOMPSON:  The expert has the copy of the entire
8    hard drive, and I am allowed to go look at it, per a protective
9    order, through the district court.  What I had specifically
10   asked for was, the -- the Government is not going to put in all
11   of that evidence.
12         THE COURT:  How many images are we talking about?
13         MS. THOMPSON:  I understand there's ten images the
14   Government intends to choose from at trial.
15         THE COURT:  Do you have those shown -- have they shown
16   you those ten images?
17         MS. THOMPSON:  They showed me a -- yes.  They showed me
18   a disc last week.  What I wanted to do was confirm on the record
19   that those are in fact the images that the Government intends to
20   use, because there were thousands of pictures.
21         THE COURT:  I got that far.  But is there -- what
22   reason is there to dispute that that's all the Government is
23   going to introduce?  Is there -- are the ten images all of the
24   Government's proof?
25         MS. THOMPSON:  I --

1    THE COURT:  Well, I'm asking the Government counsel,

2  ma'am.

3    MS. DAUGHTREY:  Your Honor, we provided a disc that had

4  the child pornography.

5    THE COURT:  Okay.

6    MS. DAUGHTREY:  And we're going to choose from those

7  images that are on there.  So I think there's some videos as

8  well as images that are on that disc.

9    THE COURT:  Okay.

10    MS. THOMPSON:  That was --

11    THE COURT:  The question was, defense counsel has said

12  they're tentative that you've shown her, that you are going to

13  introduce at trial.  Are those the only ten or are there more

14  than that?

15    MS. DAUGHTREY:  Your Honor, I don't know exactly how

16  many images are on that disc, but all of the evidence from which

17  the Government will choose to introduce exhibits that are on

18  that disc, videos and images.

19    THE COURT:  Yeah, but how many images are there?

20    MS. DAUGHTREY:  I don't know.  There's about ten, but I

21  couldn't say for sure.  But there's not a lot.

22    THE COURT:  Yeah, but ten images or 10,000?  You made

23  references to video.  I mean --

24    MS. DAUGHTREY:  Right.  There -- there are no more than

25  two dozen videos in the images on that disc.

1    THE COURT:  Yeah, but doesn't a video contain numerous
2  images?

3    MS. DAUGHTREY:  It -- it -- when you look at the
4  sentencing guidelines, it -- it is considered to contain 75
5  images, but I don't know exactly how many -- I haven't looked at
6  it and counted exactly how many videos versus images.  I know
7  it's under 24.

8    THE COURT:  Well, I'm going to order the Government by
9  the end of the day to tell the defense, because we're getting
10  close to trial --

11    MS. DAUGHTREY:  Yes, your Honor.

12    THE COURT:  -- tell them which videos and/or images
13  you're going to introduce.  I think it will facilitate the trial
14  of this case.  This case is old enough and more than enough time
15  for preparation.

16    MS. DAUGHTREY:  Your Honor, unfortunately, I am not
17  going to be able to do that by the end of today, but I could do
18  that by the end of tomorrow.  But it's a very small amount
19  that's there.  She has reviewed all of it at length last week,
20  so she's familiar with it.

21    THE COURT:  Is tomorrow sufficient time?

22    MS. THOMPSON:  Yes, your Honor.

23    THE COURT:  Okay.  Until tomorrow, then.  Does that
24  take care of the -- of the images issues?

25    MS. THOMPSON:  Yes, your Honor.

1    THE COURT:  Okay.  Now, the next one, I think that's

2    really the first the one objections were about, what's going to

3    be -- now, does she -- is she able to take these and put them on

4    her own computer or only on a computer provided by the

5    Government?

6          MS. DAUGHTREY:  Your Honor, pursuant to 18 U.S.C.

7    3509(m), we're not allowed to give her a copy to take with her.

8    But there is -- just upstairs there is a computer that's

9    available to her that's in a private room which she has been

10   using to review those images and videos.

11         THE COURT:  Well, but the issue becomes trial.

12         MS. DAUGHTREY:  Yes, your Honor.

13         THE COURT:  How to make that service available at

14   trial.

15         MS. DAUGHTREY:  That -- that will be available to her.

16   It's just upstairs.

17         THE COURT:  I know.  But I mean, would -- wouldn't it

18   be helpful to -- was there any objection to allowing defense

19   counsel to share the same computer equipment the Government is

20   going to use to introduce this?

21         MS. DAUGHTREY:  Yes.  She's welcome to use our

22   computer; yes, your Honor.  That's fine.

23         THE COURT:  Does that take care of it?

24         MS. THOMPSON:  I'm not sure it would, your Honor, the

25   reason being is that if the Government is showing a video on the

screen and the witness is testifying regarding the video, I
would like an opportunity to have my own video pulled up at
counsel table so I can fast-forward to a place that I want to
point out in the video.

THE COURT:  Well, I mean, once they show it, if
necessary, we will take a recess so you can reset it to what you
want to show.

MS. THOMPSON:  That will solve the problem, your Honor.
Yes.

THE COURT:  Okay.  All right.  Well, we've got that
resolved.

Now, they say they have given you the expert's forensic
report and supplemented that report.  Is that true?

MS. THOMPSON:  Yes, your Honor.  I have -- I do have a
copy of the expert's forensic report.

THE COURT:  Does that render moot the issues about the
expert?

MS. THOMPSON:  As long as, one, his forensic report was
the only report he relied on to develop an opinion.  And I still
wanted -- I think that today they provided me with a copy of the
expert's CV.  I wanted an updated CV.  And the Government has
indicated in its response today that the expert's going to
testify as a computer forensic expert.  And I just wanted to be
clear as to what opinions then the expert would give regarding
computer forensics, such as, the expert then is not going to --

THE COURT: Usually under our rules, he can't say
anything that's not in his report.

MS. THOMPSON: Well, his report references things such
as these search terms are often used by people when they're
searching for child pornography.

THE COURT: Why isn't that part of the res gestae of
his computer search as to how and why he did it the way he did
it?

MS. THOMPSON: Well, that would be more, your Honor, as
an expert on child pornography, how child pornography is stored.
It -- it would be outside the purview of a computer expert who
says this file is located in this folder --

THE COURT: Well, as I understand it --

MS. THOMPSON: -- on this drive.

THE COURT: -- his -- his report was prepared based
upon his search of the -- of the defendant's computer for the
child pornography at issue. So that's an integral part of what
he did.

MS. THOMPSON: So it would be fine for him to testify
that these search terms were used to search LimeWire. I am
objecting to him saying this search term, Vicky, is a search
term used to find child pornography and that the child
pornography Vicky series is a 9-year-old girl who is giving oral
sex to her father, because I say that's outside the purview of a
computer forensic expert.

1    THE COURT:  Well, I mean, isn't it part of the

2    background for how he conducted his search and why he used the

3    search terms he did?  As long as he has empirical experience to

4    support that assertion, I don't see what the problem is.

5    MS. THOMPSON:  Well, then, I --

6    THE COURT:  Are you saying he doesn't have the prior

7    experiences in computer searches for child pornography to give

8    that opinion?

9    MS. THOMPSON:  Yes, your Honor.  I am saying that he is

10   not going to be an expert in child pornography in and of itself

11   to say this is an image -- this is clearly an image of a

12   12-year-old girl.  I look at this video, and I can tell this

13   person in the video is 12.  That is not a computer forensic

14   opinion, your Honor.

15   THE COURT:  Yeah, but I mean, if it's -- whatever he

16   says, if he has an empirical basis upon which to base it, it

17   would be admissible, wouldn't it?

18   MS. THOMPSON:  If he's speaking --

19   THE COURT:  If he asserts 25 to 30 or 40 computers with

20   this word and it showed the same victim every time, why wouldn't

21   that be an empirical basis for him to testify to that effect?

22   MS. THOMPSON:  Because just because he has seen a file

23   more than once doesn't mean that it was in fact child

24   pornography.  There's a second step that goes to seeing a file,

25   and that would be the fact that this person --

1    THE COURT:  I mean, it may -- that's why I get back to

2    the res gestae.  It's part of the explanation as to why, if you

3    see that file on there, you open it up and see what's there.

4    Isn't that what he is going to say?

5        MS. DAUGHTREY:  Your Honor --

6        THE COURT:  I haven't seen the report.  I mean --

7        MS. DAUGHTREY:  Right.  It's a 53-page report, and he

8    will be testifying as an expert about what he found and reported

9    in that report.

10    He also was involved in the investigation in an additional

11    way, and he'll be testifying as a fact witness for that.  And

12    the information about his -- he'll be testifying that based on

13    his experience -- experience, investigating many of these cases

14    over the years, that he has, for example, determined that this

15    particular search term is used in relation to child pornography.

16    So that would be testimony that he'll make as a fact witness

17    versus what he found on the computer, which would be as an

18    expert.  And we will be very clear with the jury to have -- to

19    separate out those two bases on which he is going to testify.

20        MS. THOMPSON:  For the record, your Honor, I would

21    state that I believe a computer forensic expert testifies as to

22    what files are on the computer, how they are stored, when they

23    were saved there, when they were accessed, when they were

24    modified, and perhaps where they came from, if they were

25    downloaded from an Internet search.

1    I would state that somebody that's an expert in child
2  pornography would state things like, "This is -- this is child
3  pornography.  This person is under 12 in this video.  This is a
4  prepubescent teen."  And that's not what they're telling me he
5  is going to testify to.
6    I'm not saying that the Government could have him qualified
7  in more than one area, but I want to be clear in advance as to
8  what area they're intending to qualify him to give an opinion on
9  such that I can be ready to cross-examine him in that area.
10 And I think the Government is going to try to expand the opinion
11 that he's going to be giving as to what's on the computer.  It's
12 going to be more than file names, access times, how it was
13 saved.
14         THE COURT:  I don't think I can really resolve this
15 without seeing the report.  And I don't -- I just -- I don't
16 know.  I don't really understand your objections.  It's helpful
17 to me if you could tie it to more specific portions of the
18 report, that you contend he lacks the adequate basis upon which
19 to express an opinion, if it is in fact an opinion.  I just
20 don't know.
21    What day is trial set for?  I've forgotten.
22         MS. DAUGHTREY:  Your Honor, I do have --
23         MS. THOMPSON:  The 4th.
24         MS. DAUGHTREY:  I'm sorry.
25         THE COURT:  I'm going to give the -- when was the

1    supplementation provided to defense counsel?

2            MS. THOMPSON:  Today.  The CV, things like that, today.

3            MS. DAUGHTREY:  No.  The -- the curriculum vitae, I

4    believe, was provided on January the 29th.  I did provide

5    another copy today.  The actual forensic reports have been

6    provided years ago, your Honor.

7            THE COURT:  Yeah.  But wasn't there a representation

8    about supplementation of a report?

9            MS. DAUGHTREY:  There was a supplemental report that

10   has been provided, some -- I don't know exactly when it was

11   provided, but it's been -- it's been weeks, months, years ago

12   that that's been provided.

13           THE COURT:  Well, it kind of makes a difference as to

14   whether the supplementation was a year ago or a week ago.

15           MS. DAUGHTREY:  Your Honor, my understanding is, it was

16   provided in discovery.  I believe it may have been 2011 or 2012.

17   I didn't --

18           THE COURT:  I got -- I got that on the first report.

19   The question is, in the supplementation of the report -- when

20   was the supplemental report provided?

21           MS. DAUGHTREY:  The -- the original report was provided

22   in 2010.  I believe the supplement was either in 2011 or 2012.

23   I'm sorry; I don't have the file here, and I wasn't the attorney

24   at the time.  So I apologize; I can't answer that question.

25          It has been a long time, your Honor.  I think it was

1   provided prior to Ms. Thompson actually representing

2   Mr. Tummins.

3           THE COURT:  Okay.  I'm going to give you until a week

4   from today to identify any specific portions of the forensic

5   expert's report that you contend do not qualify as expert -- or

6   do not qualify as admissible expert testimony.  I -- I don't

7   think it's helpful to discuss these issues in a vacuum.  I think

8   we need more specific factual context in which to evaluate this.

9       All right.  We have the images, experts to be resolved,

10  really.  I think the last category concerning images are really

11  which images are going to be shown.  I think that's going to be

12  resolved by tomorrow.

13          MS. THOMPSON:  Yes.

14          THE COURT:  I don't know what the other evidence is.

15  The Government says it's going to identify what it's going to

16  introduce into proof, and I think that would make the motion in

17  limine on that issue moot, the defense motion in limine.

18      Now, are there any other issues that we have not covered

19  that the defense feels it needs to address?

20          MS. THOMPSON:  For the record, your Honor, I had

21  objected to the Government having a witness testify as to, like,

22  this picture is from the Vicky series --

23          THE COURT:  Well, I mean --

24          MS. THOMPSON:  -- and they answered that in their

25  response I have just received.

1    THE COURT:  I'm -- I'm telling you, I can't resolve

2    that by looking at the report.  Yes, the reporting has got to

3    lay out the factual basis for anything that he says.  If it is

4    inadequate, you can identify what it is about it that's

5    inadequate, and I'll look at it and I'll decide it.  I don't

6    think I can decide that in a vacuum.

7        MS. THOMPSON:  Yes.  Very good, your Honor.  I believe

8    those are all my concerns, your Honor.  That's -- those are all

9    my issues from my motion in limine.

10        THE COURT:  Now, the Government's motion concerns

11   this concern about possible testimony against the expert.  I'm

12   going to follow Judge Campbell's approach and, before any

13   defense -- when the defense intends to elicit anything that

14   might remotely touch on this, we're going to have an out-of-jury

15   hearing to see what it is.  I agree with Judge Campbell that

16   there's got to be a factual basis for the question.

17        MS. DAUGHTREY:  Thank you, your Honor.

18        THE COURT:  Does that resolve the Government's concern?

19        MS. DAUGHTREY:  Yes, it absolutely does.  Thank you.

20        THE COURT:  I'm going to ask counsel if you-all, before

21   we leave today, will pick up Exhibits Stickers from -- from

22   Mr. Zager.  Please put your exhibit sticker on the back page of

23   the document.  If the document has writing on it, please staple

24   it to the back page of the document.  I use exhibit stickers

25   with more detailed information about the case.  Put the exhibit

stickers on the back.  It facilitates the finding of the exhibit
during the course of the trial.

If you're at a point where you know you're going to be using
the screen, please let me know, and we can make sure that the
screen is up and running and we don't have any down time waiting
for the camera to go on.

For voir dire, I will voir dire, let counsel voir dire.  I
do not want voir dire questions touching on the merits of the
case.  I will ask questions relating to the jury panel
concerning any issues with prior experience or exposure to
child -- what is called child pornography, and I will explore --
I will explore that.  But I don't want any voir dire questions
that are a vehicle for basically putting factual issues in the
case before the jury.

We'll have our six and ten jury strikes.  We'll have --
after voir dire by me, and counsel will have a bench conference,
have challenges for cause, that will be six strikes for the
Government, ten strikes for the defense.  After that, we'll have
a bench conference to identify any -- any challenges to the
exercise of peremptory challenges.

If there's any -- if any side -- either side intends to use
a visual in the opening statement, I want it shown to the other
side ahead of time, and we can take it up.  I don't want visual
evidence going before the jury about which is a factual dispute
on admissibility.

```
1    I generally limit opening statements to 15 minutes.  If the
2  image is going to be narrowed, I think 15 minutes should
3  probably be enough for each side.  If you -- if you don't think
4  15 minutes is enough, let me hear from you.
5         MS. DAUGHTREY:  I think 15 minutes should be plenty,
6  your Honor.
7         MS. THOMPSON:  That's fine, your Honor.
8         THE COURT:  Okay.  As you-all -- as you may know.  If
9  you try a case before me, we start at 9, we go an hour and a
10  half.  Once the jury is selected, we'll go hour-and-a-half
11  sessions.  We may go a little bit later to accommodate a
12  particular witness.  We'll usually end up around 5 or 5:30, but
13  once again, we may go a little bit longer, if necessary, to
14  finish up a witness.
15    We will have a jury instruction conference toward the end of
16  the trial.  I try and get as many -- as much of the evidence
17  before we have the jury instruction conference.  If you have any
18  special jury requests, you can file them, but we won't take them
19  up until toward the end of -- very end of the trial.
20    Are there any other matters, any questions anybody has about
21  trial procedures?
22         MS. DAUGHTREY:  Not about trial procedures, your Honor.
23         MS. THOMPSON:  No, your Honor.
24         THE COURT:  Okay.  Any other questions?
25         MS. DAUGHTREY:  Your Honor, I just would like to make
```

sure it's on the record that Mr. Tummins received an offer from
the Government on January the 30th. It was by letter to his
attorney. I just would like to verify that he received it and
that he has chosen to turn that offer down and go to trial.

THE COURT: Well --

MS. DAUGHTREY: I'm referring to the Lafler Supreme
Court case when I make that request, your Honor.

THE COURT: Well, I would expect, if there's going to
be any acceptance of the offer -- it hasn't been ten days yet.
But I expect that if it was going to be an acceptance of that
offer, it would be sufficiently in advance of trial that we
don't incur the expense of having to send for the jury.

When do the jury notices go out, Jeff?

THE COURTROOM DEPUTY: I don't know.

THE COURT: Why don't we find out when the jury notice
go out? We'll take a brief recess.

(Recess.)

THE COURT: My understanding is that the jury summons
has already gone out, but that would include for all the judges
who have trials, so I don't know that it is exclusively for this
Court. But I do think that it would be necessary to make a
reasonable period of time to evaluate an offer. If it were made
on the 30th, I would expect by the end of the week, we would
expect bringing some response.

MS. THOMPSON: Yes, your Honor.

1    THE COURT:  Has the decision been made already?

2        MS. THOMPSON:  Yes, your Honor.  He had turned down --

3  we've got a written offer letter, and I reviewed it with my

4  client and his family.  And he has officially turned down the

5  offer.

6        THE COURT:  Well, the issue is moot.  Any other matters

7  to decide?

8      We usually summon -- I forgot about this.  We usually summon

9  -- we're going to summon 42 jurors.  They will be seated seven

10  to a row beginning with the second row.  You-all will move your

11  furniture around this way, so you'll be facing them.  There will

12  be 21 on this side, 21 on that side.  You will get a seating

13  chart to assist you in identifying the jurors as they are

14  seated.  And when we do the peremptory challenges, I prefer to

15  have the challenge done by seat number in the courtroom as

16  opposed to jury number.  And there will be a seat number

17  assigned to each juror, so I think it will be easy to follow.

18      Any other matters, either side?

19        MS. DAUGHTREY:  No, your Honor.

20        THE COURT:  All right.  We're adjourned.

21  (Whereupon, at 10:16 a.m., the foregoing proceedings were

22  adjourned.)

23
24

25

REPORTER'S CERTIFICATE

2


3        I, Brian V. Ratekin, Notary Public for the State of

4    Tennessee and Court Reporter, do hereby certify:

5        That I reported on the stenograph machine the proceedings

6    held in open court on February 9, 2015; in the matter of United

7    States of America vs. Tummins, Case No. 3:10-cr-00009; that said

8    proceedings in connection with the trial were reduced to

9    typewritten form by me; and that the foregoing transcript is a

10   true and accurate record of said proceedings.

11       This the 18th day of February, 2015.

12

13

14

15           S/ Brian V. Ratekin

16           BRIAN V. RATEKIN
             Registered Professional Reporter
17           Certified Court Reporter

18

19

20

21

22

23

24

25