UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


UNITED STATES OF AMERICA     )
                                     )        No. 3:10-00009
  v.                         )
                                     )        JUDGE HAYNES
JEREMY SETH TUMMINS        )


GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A MISTRIAL

The United States of America, by and through S. Carran Daughtrey, Assistant United States Attorney for the Middle District of Tennessee, respectfully submits this brief in response to defendant's motion for mistrial and to address issues raised during trial testimony by Det. Levasseur regarding search terms found on the defendant's computer.

After being declared to have "specialized knowledge as an experienced investigator of child exploitation," Det. Levasseur first testified about how file sharing, or peer to peer, programs worked, explaining that entering a keyword search would return files that contained one or more of the search terms within the filename itself, but noting that the user could not see the content of a file before it was downloaded. *See* pages 44, 48-49, Draft Transcript from 2/24/2015. Later, Det. Levasseur testified that Trial Exhibit 9 contained the Limewire search terms found on one of the computers and explained the source of the information in the two page exhibit. *Id*. at 93-94; Attachment 2. Det. Attachment was next asked what several of search terms that were on that Exhibit, including Mafia Sex, Dee and Desi, and PTHC. Id. at 94-95. In response, Det. Levasseur briefly stated that Mafia Sex and Dee and Desi were known series of child pornography, and that PTHC stood for "preteen hard core." *Id*. He also testified that some of the terms listed were not indicative of child pornography. *Id*. at 94. Notably, Det. Levasseur

1

did not testify about the defendant's intent or knowledge, nor did he testify that finding these search terms on the computer meant that the defendant intended to download child pornography or that the defendant in fact download pornography.  It is significant to note that although the defendant originally objected to having Det. Levasseur declared as someone with specialize knowledge who could testify about keywords associated with child pornography, he did not object during direct examination that the investigator's testimony was misleading or unfairly prejudicial.

The government respectfully submits that this Court properly ruled that Det. Levasseur has specialized knowledge as to the investigation of online child exploitation cases, and that the detective's testimony about the meaning of terms related to such investigations was also proper and in no way prejudicial to the defendant.  Other courts have readily and regularly allowed introduction of such proof.  For example, in one similar case, a district court not only allowed testimony that certain search terms were related to child pornography, but the Tenth Circuit later found the evidence sufficient for a rational jury to find a defendant guilty of attempt to receive child pornography, when the counts were based on Internet searches by the defendant using "search terms that are connected to child pornography, including 'pthc,' meaning 'preteen hard core,' 'stickam,' 'vichatter,' 'kidcam,' and 'preteen,'" that resulted in the defendant's downloading of files with titles suggesting the files contained child pornography.  *United States v. Nance*, 767 F.3d 1037, 1044 (10th Cir. 2014).  It is significant to note that, like some of the terms identified in this case, the terms in *Nance* were not obviously connected to child pornography and required the testimony from someone with specialized knowledge.  The *Nance* court also held that "names of each of these files would support a reasonable jury's finding beyond a reasonable doubt that defendant believed the files contained child pornography."  *Id.*

2

(citing *United States v. Fabiano*, 169 F.3d 1299, 1306 (10th Cir. 1999) (relying, in part, on evidence of graphic titles of files to uphold conviction for knowingly receiving child pornography)). *See also United States v. Pires*, 642 F.3d 1, 9 (1st Cir. 2011) (holding that a "defendant's use of search terms associated with child pornography can support a finding that he knew that the images retrieved contained child pornography."); *United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010) (stating that "the methods by which [defendant] located and downloaded the images at issue support a finding that he knew the images depicted actual minors"). An alternative to Det. Levasseur's testimony about the terms associated with child pornography was to introduce direct evidence that searching with such terms would result in the acquisition of child pornography, an option that the government rejected in an effort to streamline the trial and avoid additional prejudicial evidence.

Om the instant case, the question is not whether the testimony about the meaning of certain words is admissible, but rather how much weight should be given such testminoy, which is a question for the jury. Any such objection by the defendant is best resolved through the time-tested ritual of cross-examination and presentation of contrary evidence. For example, in *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court addressed concerns of the respondent about the new preconditions for admissibility of scientific, technical, or other specialized knowledge by explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. 579, 596 (1993). During a hearing on the matter at hand on February 25, 2015, this Court expressed concern that a search in a peer to peer, or file sharing, context using a keyword associated with child pornography might not result in the download of a child pornography file. But this possibility was elicited from the witness on direct

3

with the explanation that peer to peer networks involve individual users' computers, no "quality" control existed, and that a user cannot know the content of the file before the file is downloaded. Significantly, the possibility that someone on the internet might mislabel a file does not make inadmissible the testimony that a particular term has a meaning associated with child pornography. The remedy for the defense, if any is necessary, is a vigorous cross examination, in which the defense is free explore the previous testimony that not all peer to peer search results contain what they say they contain, that the defendant could get adult pornography using some of the terms associated with child pornography, or that the defendant was unaware of the meaning of those terms and was seeking out something entirely different. At the conclusion of the case, the jurors can then draw whatever inferences they want based on the evidence.

Furthermore, during this trial, the government has presented uncontroverted evidence that the defendant searched file sharing networks with numerous search terms that are obviously related to minors, including but not limited: school girl, teen, preteen boys, pedo, high school cheerleader nudity, young teen sex, highschool, underage, youngsex. *See* pages 104-105, Draft Transcript from 2/24/2015; Trial Exhibits 9, 12, 17. Attachments 2, 5, 8. Additionally, there is overwhelming evidence that the defendant actively downloaded dozens of files whose filenames contained even more explicit terms, as seen in Trial Exhibits 10, 11, 13, 14, 17, 18, 19, 20, 21. Attachments 3, 4, 6, 7, 8, 9, 10, 11, 12. Finally, the defendant admitted to the detective that he had downloaded child pornography for three years and signed a written statement to that effect, as shown in Exhibit 7. Attachment 1. Thus, even if this Court were to rule the testimony about the meaning of some of the terms listed in Exhibit 9 to be inadmissible, any error would be harmless since many other search terms and file names actively downloaded have the same or similar meanings.

4

Should this Court find that this evidence is not admissible, the government suggests that a curative instruction is the appropriate remedy rather than a mistrial, since the prejudice to the defendant in minimal at best, given the other overwhelming evidence in this case and the fact that no attention was brought to the testimony at issue.

Wherefore, the government requests that this Court deny defendant's motion and allow defense counsel to proceed with her cross examination of the witness.

Respectfully submitted,

DAVID RIVERA
United States Attorney

s/ S. Carran Daughtrey
S. Carran Daughtrey
Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct electronic copy of the foregoing has been delivered to Jennifer Thompson, attorney for defendant, via electronic filing, on this, the 26th day of February, 2015.

s/ S. Carran Daughtrey
S. Carran Daughtrey